**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| THERESE AFDAHL, | : CIVIL ACTION NO. 09-1332 (MLC) |
| Plaintiff, | : **MEMORANDUM OPINION** |
| v. | : |
| FRANK CANCELLIERI, et al., | : |
| Defendants. | : |

**COOPER, District Judge**

The plaintiff, Therese Afdahl, brought this action pursuant to 42 U.S.C. § ("Section") 1983 alleging violations of her First Amendment and Eighth Amendment rights. (Dkt. entry no. 1.) The Court initially dismissed the First Amendment claims and permitted the Eighth Amendment claims to proceed. (Dkt. entry no. 3.) The Court — in response to (1) a motion by the defendants Dr. Frank Cancellieri, Kiesha Williams, Shelly Wilson-Howard, and Correctional Medical Services ("CMS") to dismiss the Complaint insofar as asserted against them, and (2) a separate motion by the defendant Dr. Louis Colella to dismiss the Complaint insofar as asserted against him — then dismissed the remaining claims against CMS and the claim brought against Colella in his official capacity. (Dkt. entries nos. 31, 32, 36 & 37.) When discovery closed, Cancellieri, Williams and Wilson-Howard moved for summary judgment in their favor ("First Motion"). (Dkt. entry no. 71.) Colella moved separately for summary judgment in his favor

("Second Motion"). (Dkt. entry no. 76.) Plaintiff opposed the First Motion and Second Motion. (Dkt. entry no. 82.) The Court will determine these Motions without an oral hearing. See Fed.R.Civ.P. 78(b). For the reasons stated herein, the Court will grant the First Motion and Second Motion.[1]

## BACKGROUND

**I. Facts Relevant to the First Motion**

Plaintiff is a state prisoner currently incarcerated at Edna Mahan Correctional Facility ("EMCF"). On August 24, 2008, she developed a toothache and submitted a medical/dental request form ("request form") indicating merely that she was experiencing a "toothache." (Id. at 5.) On August 27, 2008, Plaintiff was seen by a nurse, given ibuprofen ("Motrin") and informed that she would be scheduled for an appointment with a professional in the EMCF dental department. (Id.) On August 29, 2008, Plaintiff was examined by Cancellieri and Williams. (Id.) An X-ray was performed, and Cancellieri determined that a root canal procedure should be scheduled. (Dkt. entries no. 71-9 and 71-10.) For the meantime, Plaintiff was prescribed 800 mg of Motrin, three times a day, as a painkiller. (Id.)

---

[1] The plaintiff also cross-moved to compel discovery and for sanctions. (See dkt. entry no. 82.) The cross motion appears to have been resolved by the Magistrate Judge. (See dkt. entry no. 80.) To the extent that the cross motion may be viewed as remaining viable, the Court will deny it as moot.

On September 3, 2008, Plaintiff submitted another request form and, on September 4, 2008, was seen by an administrative assistant who assured Plaintiff that her follow-up dental care would take place as soon as possible. (Dkt. entry no. 1, at 6.) On September 8, 2008, Plaintiff met with Williams and requested an increase of her Motrin prescription. (Id.) Williams denied that request, but informed Plaintiff that the dental follow-up treatment would be in a week. (Id.)

Starting on September 9, 2008, and for the following few days, Plaintiff suffered abdominal cramps, nausea, and vomiting, which she ascribed to her consumption of Motrin. (Id. at 7.) Plaintiff, therefore, was prescribed Vicodin instead of Motrin. (Id.)

On September 16, 2008, Cancellieri and Williams performed a partial root canal and detected an infection around the affected area. (Id. at 8.)

On October 15, 2008, Plaintiff had further work performed on her root canal. (Id.) On October 19, 2008, she began experiencing severe pain in the root canal area, and observed swelling on the next day. (Id. at 9.) Plaintiff was seen by a nurse and prescribed an antibiotic to control the infection. (Id. at 10.)

On October 30, 2008, another doctor and an assistant (both not named as defendants in his matter) treated Plaintiff; her root canal procedures were completed on November 26, 2008, by yet

3

another doctor and an assistant (also not named among the defendants). (Id. at 12.)

Plaintiff alleged that her constitutional rights were violated by Cancellieri, Williams and Wilson-Howard because: (1) the dental treatment of Plaintiff by Cancellieri and Williams was not as speedy as Plaintiff felt proper; (2) Cancellieri prescribed Plaintiff Motrin in a dosage that she believed was unduly high and presumed to be the cause of her stomach cramps and vomiting; and (3) Wilson-Howard did not take measures to ensure that Plaintiff's root canal procedure would be speedier.

**II.  Facts Relevant to the Second Motion**

Colella, the Director of Dental Services for the New Jersey Department of Corrections ("NJDOC"), does not perform any dental work and holds no supervisory authority over the medical and dental staff of NJDOC, even though his responsibilities include various advisory functions, including making non-binding suggestions as to the course of treatment for a particular inmate. (Dkt. entries no. 76-2 and 76-4.)[2]

Plaintiff spoke with and wrote to Colella in 2005 and June 2008, expressing dissatisfaction with the general dental care at EMCF and with the treatment she had been receiving on prior

---

[2] Facts related to the Second Motion were established, predominantly, during discovery by mutual interrogatories and affidavits.

4

occasions, unrelated to the facts alleged in the Complaint. (Dkt. entry no. 76-4.)

As to the events listed in the Complaint, Plaintiff wrote to Colella on September 11, 2008, requesting that her root canal procedure (prescribed by Cancellieri two weeks prior to that mailing, i.e., on August 29, 2008) would begin. (Id.) When Colella received Plaintiff's letter on September 19, 2008, and examined her medical file, the latest entry in the file indicated that Plaintiff's root canal procedures were already underway: since September 16, 2008. (Id.)

On October 15, 2008, Plaintiff wrote to Colella again, this time stating her dissatisfaction about the speed with which various steps of her treatment were administered. (Id.)

Plaintiff asserted that her constitutional rights were violated by Colella because he did not take measures to ensure that her root canal procedure would be speedier.

**DISCUSSION**

**I.   Motion for Summary Judgment**

   **A.   Summary Judgment Standard**

The standard for resolving a motion for summary judgment is well-settled and will be briefly summarized here. Summary judgment should be awarded if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). In making this determination,

the Court must "view[] the record in the light most favorable to the non-moving party and draw[] all inferences in that party's favor." United States ex rel. Kosenske v. Carlisle HMA, Inc., 554 F.3d 88, 94 (3d Cir. 2009) (citing Abramson v. William Paterson Coll., 260 F.3d 265, 276 (3d Cir. 2001)).

**B.    Section 1983 and Eighth Amendment**

To state a claim under Section 1983, a plaintiff must allege: (1) the violation of a right secured by the Constitution or laws of the United States, and (2) that the alleged deprivation was committed or caused by a person acting under color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d. Cir. 1994).

To survive a motion for summary judgment, the plaintiff must demonstrate a genuine issue of fact as to whether the defendant (1) acted under color of state law; or (2) deprived the plaintiff of a federal right. See Groman v. Twp. of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995).

A plaintiff can properly allege an Eighth Amendment violation by demonstrating that a defendant was deliberately indifferent to serious medical needs. See Erickson v. Pardus, 551 U.S. 89, 90 (2007). The plaintiff must first demonstrate that the medical needs are serious. See Coley v. Sulayman, 2007 WL 2306726, at *2 (D.N.J. Aug. 7, 2007). Serious medical needs are those that have been diagnosed by a physician as requiring treatment or are so

6

obvious that a lay person would recognize the necessity for medical attention, and those conditions which, if untreated, would result in a lifelong handicap or permanent loss.  See Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).  The plaintiff must next demonstrate that the defendant acted with deliberate indifference to the serious medical need.  Deliberate indifference requires more than mere negligence or lack of due care.  See Farmer v. Brennan, 511 U.S. 825, 835 (1994).  "Mere medical malpractice cannot give rise to a violation of the Eighth Amendment."  White v. Napoleon, 897 F.2d 103, 108 (3d Cir. 1990).  To demonstrate deliberate indifference, the plaintiff must demonstrate that the defendant was "subjectively aware of the risk" of harm to the plaintiff.  See Farmer, 511 U.S. at 828.  The plaintiff must allege acts or omissions that are sufficiently harmful to offend "evolving standards of decency."  Estelle v. Gamble, 429 U.S. 97, 106 (1976).

**II.  Defendants' Motions Shall Be Granted**

Plaintiff alleges that Cancellieri and Williams violated her Eighth Amendment rights by not proceeding with the steps of her root canal procedure in a speedier fashion and by prescribing her too high a dosage of Motrin, and that Wilson-Howard and Colella violated Plaintiff's Eighth Amendment rights by not taking measures that could have resulted in speedier treatment.

### A. Plaintiff's Disputed Material Facts

Plaintiff asserts that material facts are in dispute as to her constitutional challenges. (Dkt. entry no. 91-3.) As to the First Motion, Plaintiff

> submit[ted] the following list of [her] genuine issues of material fact[s:]
>
> 1. Whether defendant Cancellieri, . . . failed to ensure [P]laintiff was rescheduled for treatment in a timely manner, as required by law.
> 2. Whether defendant Cancellieri, with personal knowledge of [P]laintiff's serious medical condition, acted recklessly and callously in his delay to treat [P]laintiff for a serious medical condition in a timely manner, as required by law.
> 3. Whether defendant Wilson—Howard in her position as Hospital Services Manager, had supervisory authority over the dental staff to ensure treatment was provided in a timely manner for a serious medical condition, as required by law, once she had personal knowledge of [P]laintiff's existing need.
> 4. Whether defendant Wilson—Howard acted recklessly and callously in her failure to ensure [P]laintiff was treated in a timely manner, once treatment had been prescribed.
> 5. Whether defendant Williams, in her position as Dental Assistant with scheduling responsibilities, acted maliciously and with reckless and callous disregard in her delay to schedule [P]laintiff for prescribed treatment in a timely manner for a serious medical need, as required by law, having been made aware personally and repeatedly by the [P]laintiff of her pain and suffering.
> 6. Whether defendants Cancellieri, Wilson—Howard and Williams, . . . having been made aware personally of the existing serious medical need of [P]laintiff, acted with deliberate indifference to [P]laintiff's serious medical needs, in their individual and collective failure to ensure that [P]laintiff's federally protected Constitutional rights were not violated.

Id.

8

As to the Second Motion, Plaintiff

> submit[ted] the following list of [her] genuine issues of material fact[s:]
>
> 1. Whether [Colella] has authority over any/all dental servers contracted by the NJDOC.
> 2. Whether [Colella] had the authority to rectify the delays in treatment for painful conditions, once treatment was determined by the dentist.
> 3. Whether [Colella] had knowledge of delayed treatments for [P]laintiff's painful conditions, once treatment was determined.
> 4. Whether [Colella] took action to rectify the delays in treatment for [P]laintiff's painful conditions, once treatment was determined by a dentist.
> 5. Whether [Colella] has to date taken action to implement policy preventing the delay in treatment for painful conditions, once treatment was determined by a dentist.
> 6. Whether [Colella's] inactions to rectify delays in treatment of painful conditions once determined by a dentist, caused [P]laintiff repeated and unnecessary pain and suffering.
> 7. Whether [Colella's] inactions entitles [P]laintiff to injunctive relief and punitive damages.

(Dkt. entry no. 90-3.)

These statements, however, do not assert a dispute as to material facts; rather, they assert a panoply of alternative legal conclusions. As the discussion below illustrates, Plaintiff's legal conclusions are without merit.

### B. Speed of Treatment

The record unambiguously establishes that Plaintiff was provided with dental care throughout the entire period at issue. While Plaintiff asserts that the care provided to her was not as speedy as she believes was "required by law," constitutional law does not set any particular time frame for treatment. Rather, a

delay in medical care operates as a basis for a claim of constitutional magnitude only if the delay was so substantial that it was, effectively, a denial of medical care in light of the particularities of the medical need at issue. See Lanzaro, 834 F.2d at 347 ("Deliberate indifference is . . . evident where prison officials erect arbitrary and burdensome procedures that result in interminable delays and outright denials of medical care to suffering inmates"); see also Crowley v. Hedgepeth, 109 F.3d 500, 502 (8th Cir. 1997) (where delay is involved, seriousness of inmate's medical need is determined by effects of delay); Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1188-89 (11th Cir. 1994) (same); Olson v. Stotts, 9 F.3d 1475, 1477 (10th Cir. 1993) (same).  For instance, even where a doctor failed to secure three arteries during removal of an inmate's intestines, causing the inmate continuous internal bleeding and severe pain, and the inmate had to wait seventeen days for the second surgery to secure his arteries, the doctor's actions and delay in performing the second surgery were "classic negligence . . . not actionable under § 1983."  Cook v. Shah, 2010 U.S. Dist. LEXIS 138514 (D.N.J. Dec. 28, 2010); compare Green v. Corzine, 2011 U.S. Dist. LEXIS 17191 (D.N.J. Feb. 22, 2011) (where inmate was prescribed but not provided with special footwear and suffered blisters and bleeding ulcers for ten months due to delay in filling his prescription, the inmate's challenges could amount to a violation of constitutional magnitude).

The record here shows that Plaintiff had constant dental care.  Although the speed of that care was, undoubtedly, less than exemplary, the delays asserted by Plaintiff cannot amount to anything more than a claim of medical malpractice or negligence.  See Inmates of Allegheny Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (stating courts will disavow any attempt to second-guess propriety or adequacy of particular course of treatment, which remains question of professional judgment); see also Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004) (same).

The Court, therefore, need not reach Plaintiff's assertions that Wilson-Howard had a supervisory obligation to speed up Plaintiff's dental care or that Colella had supervisory authority to direct a speedier treatment, since the dental care provided by Cancellieri and Williams did not offend constitutional standards.  Consequently, the First Motion and Second Motion will be granted as to Plaintiff's challenges based on the speed of her dental care.

**C.   Prescription of Motrin**

Plaintiff also asserts that the 800 mg, three times a day, prescription of Motrin was too high and, thus, violated her constitutional rights.[3]  But Plaintiff makes no showing that such a prescription is too high for an average person.  Similarly,

---

[3] Defendants correctly point out that Plaintiff's position is irreconcilable with her request to Williams for more Motrin per day and also with Plaintiff's self-diagnosis that she needed a 1000 mg, four times a day, dosage of Motrin.

11

Plaintiff offers no evidence suggesting that Cancellieri and Williams had any reason to know that such a prescription was, uniquely enough, too high and potentially harmful to Plaintiff. Here, Plaintiff's challenges turn on nothing but her self-serving conjecture that the dosage of her prescription could have been the cause of the brief period of stomach cramps and vomiting that she experienced. However, such conjecture is not among the bases establishing the presence of disputed material facts.

In light of the foregoing, and taking notice of Plaintiff's failure to include any references to her Motrin prescription in her statement of disputed material facts (dkt. entries nos. 90-3 and 91-3), the Court will grant the First Motion and Second Motion as to Plaintiff's Motrin-based challenges.

## CONCLUSION

The Court, for the reasons stated <u>supra</u>, will grant the First Motion and Second Motion. The Court will issue an appropriate order and judgment.

                                                    s/ Mary L. Cooper  
                                              **MARY L. COOPER**  
                                              United States District Judge

Dated: April 4, 2011